46 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary Wayne BUTTERBAUGH, Defendant-Appellant.
 No. 94-50023.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1994.
Decided Dec. 30, 1994.
 
 1
 Before: BROWNING, ALDISERT,* and GOODWIN, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 I. Admissibility of Evidence Concerning 1985
 
 
 4
 The district court did not abuse its discretion by admitting evidence of Butterbaugh's fraudulent conduct in 1985 under Rule 404(b).[1] The cashed checks and Johnson's testimony were sufficient to prove the prior fraudulent activity; because the conduct occurred in the year preceding the charged offense, it was not too remote in time; the prior conduct was essentially identical to that with which Butterbaugh was charged; and the evidence was probative of willfulness, an essential element of the offense of subscribing to a false tax return. See, e.g., United States v. Bergman, 813 F.2d 1027, 1029 (9th Cir.1987) (finding evidence of other misconduct in filing of tax returns highly probative of willfulness).
 
 
 5
 The evidence also satisfied Rule 403. It was highly probative of willfulness, see id., and the court's limiting instruction to the jury reduced the risk of unfair prejudice, see United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1991).
 
 II. Butterbaugh's Admission
 
 6
 The evidence of Butterbaugh's leading role in handling the company finances and keeping the records upon which the 1986 tax return was based, as well as Alvino's failure to disagree with Butterbaugh's statement in Alvino's presence that Butterbaugh had signed the return, was sufficient to corroborate the truth of Butterbaugh's admission. See Smith v. United States, 348 U.S. 147, 156 (1954) ("[O]ne available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused.").
 
 III. Sufficiency of Evidence
 
 7
 Viewed in the light most favorable to the government, the evidence was sufficient as to each element of the charged offense. The evidence established that the 1986 return omitted over $94,000 in cash receipts and overstated deductions by over $5,300. The fact that there may not have been a tax deficiency is irrelevant. See United States v. Marashi, 913 F.2d 724, 736 (9th Cir.1990). Butterbaugh's admission and the corroborating evidence established that he signed the 1986 tax return under penalty of perjury. The evidence also demonstrated that Butterbaugh did not tell the accountant about the false expense checks or the checks representing gross receipts that he cashed at Curley's even though he understood that the failure to report these transactions would result in the overstatement of deductions and understatement of income in the return. This evidence was sufficient to establish that Butterbaugh did not believe the 1986 tax to be true as to every material matter. Finally, because Butterbaugh cashed checks at Curley's knowing that his activity would result in understated gross receipts and overstated business deductions, a rational factfinder could find that Butterbaugh "knew or must have known that his returns were false," United States v. Claiborne, 765 F.2d 784, 798 (9th Cir.1985), and that he therefore voluntarily and intentionally violated a known legal duty by signing and filing the return, see United States v. Powell, 955 F.2d 1206, 1211 (9th Cir.1992).
 
 IV. Alleged Brady Violation
 
 8
 Before Butterbaugh learned of Alvino's grand jury testimony, Butterbaugh claimed he had not signed the tax return and was aware that Alvino's name was on the return. In these circumstances, a reasonable defendant would have attempted to depose Alvino. In short, the Brady rule was not applicable to Alvino's grand jury testimony that he had signed the return because this evidence was readily available to Butterbaugh. See Marashi, 913 F.2d at 733-34.
 
 
 9
 Even if the Brady rule were applicable, the prosecution would only have been required to turn over the evidence "at a time when the disclosure would be of value to the accused." See United States v. Davenport, 753 F.2d 1460, 1462 (9th Cir.1985). Because the prosecution alerted the defendant about the evidence on the first day of trial, Butterbaugh could have called Alvino as a witness or at least sought a continuance to reconsider his strategy. See United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988) (finding no Brady violation even though evidence impeaching government's principal witness was not disclosed until after government concluded its case-in-chief).
 
 V. Abuse of Grand Jury Process
 
 10
 The alleged error in the prosecutor's statements to the grand jury as to the elements of the offense was not prejudicial. It is clear that the grand jury focused on whether Butterbaugh himself had signed the return and was not misled into thinking it would be sufficient if Butterbaugh had merely filed the return. Thus, assuming the instruction was erroneous, Butterbaugh "still [has] not shown the erroneous instructions influenced the decision to indict or created a 'grave doubt' that the decision to indict was free from the substantial influence of such a violation." United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir.1989).
 
 VI. Prosecutorial Misconduct
 
 11
 The district court did not clearly err in determining that any prosecutorial misconduct was not " 'so pronounced and persistent that it permeated the entire atmosphere of the trial." United States v. Flake, 746 F.2d 535, 542 (9th Cir.1984) (quoting United States v. Lichenstein, 610 F.2d 1272, 1281 (5th Cir.1980)).
 
 A. References to Johnson's Guilty Plea
 
 12
 Although the prosecution's discussion of Johnson's guilty plea in its opening statement was improperly phrased and the questioning of Johnson about his plea violated a court order, the errors were harmless. The prosecution could in good faith have believed that Johnson's plea would be admissible as an aid to the jury in evaluating his credibility. See United States v. Halbert, 640 F.2d 1000, 1004-05 (9th Cir.1981). The court's prompt curative instructions rendered any error during the direct examination harmless. See United States v. Weizenhoff, 35 F.3d 1275, 1291 (9th Cir.1994).
 
 B. Questioning of the Accountant
 
 13
 The prosecution's questioning of the accountant was not prejudicial error. The accountant did not answer the question--for all the jury knew, the accountant would have said he would have continued to prepare the company tax return whether or not Alvino became more involved. Unlike the questions in United States v. Meeker, 558 F.2d 387 (7th Cir.1977), the case upon which Butterbaugh relies, the queries in this case were not pervasive or leading and did not incorporate false assumptions or facts outside the record. See id. at 388-90.
 
 C. Prosecution's Closing Argument
 
 14
 The prosecution may have been unnecessarily personal in its response to the defense's charge that the government's calculations were incorrect, but the rebuttal generally challenged perceived misrepresentations of the record in defense attorney's closing argument, a subject within the scope of permissible argument. See United States v. Gwaltney, 790 F.2d 1378, 1385 (9th Cir.1986). If the rebuttal overstepped proper bounds, it did not rise to the level of plain error necessary to justify reversal. See United States v. Falsia, 724 F.2d 1339, 1342 (9th Cir.1983).
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Contrary to Butterbaugh's contention, admission of the prior acts evidence was not in contravention of the district court's order