Alan Rejandra NAIDOO

v.

IMMIGRATION & NATURALIZATION SERVICE, et al.

No. 98–CV–1045.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

March 29, 1999.

**756**

Jose W. Vega, Oakdale, LA, for Petitioner.

Katherine W. Vincent, Lafayette, LA, for Respondent.

## JUDGMENT

TRIMBLE, District Judge.

There being no objection to the proposed findings of fact and conclusions of law in the Report and Recommendation of the Magistrate Judge previously filed herein these findings and conclusions are accepted. Alternatively, an independent review of the record has led this court to conclude that the proposed findings and conclusions are entirely correct. Accordingly, it is

ORDERED that Petitioner's application for writ of *habeas corpus* be DENIED and DISMISSED as this court is without jurisdiction to consider his challenges or to grant the relief he seeks.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 29th day of March, 1999.

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed on behalf of petitioner, Alan Rejandra Naidoo. By this petition, Petitioner challenges his removal order and the denial of discretionary relief as well as the constitutionality of the provisions of the Immigration & Nationality Act which limit judicial review. This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

Petitioner is a native and citizen of South Africa, who entered the United States on August 26, 1976, at New York, New York, as a non-immigrant student. He adjusted his status to that of a lawful permanent resident on October 6, 1978. *See* Government Exhibit A.

On April 6, 1988, Petitioner was convicted in the United States District Court, Eastern District of California, of the offense of Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1), and sentenced to a term of imprisonment of fifteen (15) years. *See* Government Exhibit B. Petitioner's conviction was affirmed by the Ninth Circuit Court of Appeals on April 10, 1992. *United States v. Naidoo,* 1992 WL 72862 (9th Cir.1992) (unpublished). *See* Government Exhibit BI. Petitioner was incarcerated for this conviction from the date of his arrest,

April 24, 1987, until expiration of sentence on March 8, 1996.

By Order to Show Cause dated November 24, 1995, Petitioner was charged with being deportable pursuant to 8 U.S.C. § 1251(a)(2)(B)(i)[1] which generally provides that at any time after entry, an alien who has been convicted of a violation of any law or regulation relating to a controlled substance is deportable. *See* Government Exhibit C.

Upon Petitioner's release from the custody of the Bureau of Prisons (BOP) on March 8, 1996, he was taken into INS custody. *See* Government Exhibit D. The INS determined that Petitioner should be detained without bond pending a final determination of deportability. *See* Government Exhibit E. However, Petitioner requested a bond hearing before an Immigration Judge, and on March 8, 1996, an Oakdale Immigration Judge set an immigration bond for Petitioner's release pending immigration proceedings at $20,000. *See* Government Exhibit F. Petitioner posted bond and was released from INS custody that same day. *See* Government Exhibit G.

On March 8, 1996, an immigration judge found Petitioner deportable as charged in the Order to Show Cause, ineligible for discretionary relief from deportation under 8 U.S.C. § 1182(c)[2], and he ordered Petitioner deported to South Africa. *See* Government Exhibit H.

Petitioner appealed this decision to the Board of Immigration Appeals (BIA). On May 8, 1998, the BIA denied and dismissed Petitioner's appeal. *See* Government Exhibit I.

Petitioner filed a Petition for Review in the United States Court of Appeals for the Fifth Circuit requesting a stay of deportation and review of the order of deportation and denial of discretionary relief from de-

portation. On June 17, 1998, the Fifth Circuit denied Petitioner's motion for stay of deportation and dismissed the petition for lack of jurisdiction. *See* Government Exhibit K.

Petitioner has also filed a Petition for Review in the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit has issued a stay of deportation which was in effect at the time that the respondent filed a response. *See* Government Exhibit L. The court is uncertain of the status of this stay.

Petitioner filed this application for *habeas corpus* relief on June 8, 1998 seeking to have the court (1) find that it has jurisdiction to review his claims, (2) stay his deportation, (3) find that his removal order is unlawful; and (4) declare the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) unconstitutional to the extent it denies judicial review.

The respondent has answered this petition and has moved for dismissal claiming that this court lacks jurisdiction to grant Petitioner the relief that he seeks and that the Constitution does not require judicial review of a deportation order.

## LAW AND ANALYSIS

The procedural history recounted above clearly indicates that Petitioner's deportation proceedings were pending at the time that the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA)and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) were enacted.[3] These two Acts made sweeping changes to the Immigration and Nationality Act (INA). Relevant for the purposes of this evaluation are the changes which limited the class of aliens who are entitled to apply for discretionary relief and the broad statutory changes which

1. § 241(a)(2)(B)(i) of INA. Note that this section has been redesignated and moved 8 U.S.C. § 1227(a)(2)(B)(i) [§ 237(a)(2)(B)(i) of the INA].

2. § 212(c) of the INA

3. AEDPA was enacted on April 24, 1996; IIRIRA was enacted on September 30, 1996.

758

limit judicial review of immigration matters. The claims presented in this petition are primarily directed towards the application of the amended law to Petitioner's case.

In his petition for writ of habeas corpus, Petitioner challenges the denial of discretionary relief under 8 U.S.C. 1182(c)[4] and the elimination of judicial review of deportation/removal orders for certain criminal aliens.

Initially this court notes that Petitioner's criminal conviction and fifteen (15) year sentence caused him to be ineligible for discretionary relief under 8 U.S.C. § 1182(c) as it existed prior to the passage of AEDPA.[5] Thus, the change in the law occasioned by § 440(d) of AEDPA[6] had no substantive effect on Petitioner's eligibility for discretionary relief. Nevertheless, before the passage of AEDPA and IIRIRA, Petitioner could have sought judicial review of his deportation order and the denial of discretionary relief in the court of appeals. Currently, the statutory provisions preclude judicial review of deportation orders by aliens convicted of certain criminal offenses, including controlled substance violations. Thus, this court will focus on Petitioner's argument that the amendments to the INA eliminating judicial review for criminal aliens such as Petitioner are unconstitutional.

## I. Statutory Provisions Governing Judicial Review of Deportation/Removal Orders

Prior to the amendments, 8 U.S.C. § 1105a(a)[7] provided that "the sole and

---

4. § 212(c) of the INA

5. Prior to the 1996 amendments, 8 U.S.C. § 1182(c) provided for discretionary relief from exclusion and/or deportation for lawful permanent residents. *See Hernandez–Rodriguez v. Pasquarell*, 118 F.3d 1034, 1039 n. 4 (5th Cir.1997); *Rodriguez v. INS*, 9 F.3d 408, 411–12 (5th Cir.1993) (by its express terms, 8 U.S.C. § 1182(c) applied to excludable aliens, however, the application of this section has been expanded by judicial and administrative decisions to apply to deportable aliens if the ground for deportation would also be a ground for exclusion). However this discretionary relief was not available to aliens convicted of aggravated felonies who had served five years or more imprisonment as a result of their conviction(s). This section provided as follows:

> Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felo-

nies a term of imprisonment of at least 5 years.

6. On April 24, 1996, § 440(d) of AEDPA amended 8 U.S.C. § 1182(c) to expand the class of aliens for whom discretionary relief was unavailable. This amended section provided as follows:

> (c) Nonapplicability of subsection (a)
> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.
> This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

On September 30, 1996, 8 U.S.C. § 1182(c) was repealed in its entirety by § 304(b) of IIRIRA.

7. § 106(a) of the INA.

exclusive procedure for … the judicial review of all final orders of deportation" was by filing a petition for review in the appropriate court of appeals. The INA also provided a *habeas corpus* provision codified at 8 U.S.C. § 1105a(a)(10) [8] which stated as follows:

> Any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

Habeas corpus was also available to aliens in exclusion proceedings as the INA provided that "aliens may obtain judicial review of [an exclusion] order by *habeas corpus* proceedings and not otherwise." 8 U.S.C. § 1105a(b).

Section 401(e) of AEDPA struck the text of former 8 U.S.C. § 1105a(a)(10), and § 440(a) of AEDPA replaced the former § 1105a(a)(10) with the following language:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title, shall not be subject to review by any court.[9]

Courts of appeals have held that § 440(a) of AEDPA became effective upon enactment of AEDPA and applied to pending applications for review. See *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27 (2d Cir.1996); *Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996); *Salazar–Haro v. Immigration & Naturalization Service*, 95 F.3d 309 (3rd Cir.1996).

Shortly after the enactment of AEDPA, Congress amended the INA again with the passage of IIRIRA. IIRIRA contained two sets of provisions: (1) non-codified transitional provisions and (2) permanent provisions. Both the transitional and permanent provisions of IIRIRA further amended the judicial review provisions of the INA.

Specifically, § 309(c)(4) of IIRIRA set forth the transitional rule governing judicial review. IIRIRA's transition rules are applicable to all pending cases in which a final order of exclusion or deportation is entered more than 30 days after the date of IIRIRA's enactment. *See* IIRIRA § 309(c)(4). These transitional rules generally provide that a petition for review of a final order of exclusion or deportation shall be filed in the court of appeals. IIRIRA § 309(c)(4)(d).[10] However, such review does not extend to certain criminal aliens. The jurisdiction-limiting provision found in IIRIRA § 309(c)(4)(G) states as follows:

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [8 U.S.C. § 1182(a)(2)] or [8 U.S.C. § 1251(a)(2)(A)(iii), (B), (C), or (D)] (as in effect as of the date of enactment of this Act), or any offense covered by [8 U.S.C. § 1251(a)(2)(A)(ii)] (as in effect on such date) for which both predicate offenses are, without regard to their

**8.** This court has consistently construed this provision as being limited to *habeas corpus* review of custody issues in the district court. *See Thomas, supra; Amerson v. Reno*, (finding 8 U.S.C. § 1105a(a)(10) as being limited to review of custody issues, but finding that 28 U.S.C. § 2241 provided a basis for district courts to review final deportation orders.) *See* discussion *infra.*, pp. 13–14.

**9.** The criminal offenses mentioned in this section have been redesignated and relocated to 8 U.S.C. § 1227. See footnote 1, *supra*, regarding the redesignation of § 241 as § 237 of the INA.

**10.** § 309(c)(4)(D) of IIRIRA's transitional rules provides:

> (D) the petition for review [of a final order of deportation and/or exclusion] shall be filed in the court of appeals for the judicial circuit in which the administrative proceedings before the special inquiry officer or immigration judge were completed.

date of commission, otherwise covered by [8 U.S.C. § 1251(a)(2)(A)(i) ] (as so in effect).

In the permanent provisions of IIRIRA, § 306 of IIRIRA repealed 8 U.S.C. § 1105a [11] in its entirety, and redesignated the provision pertaining to judicial review of removal orders as 8 U.S.C. § 1252.[12] *See* IIRIRA § 306(a), (b). Under these permanent provisions, venue remains in the court of appeals for review of removal orders. However, as with AEDPA § 440(a) and transitional IIRIRA § 309(c)(4)(G), review of removal orders does not extend to certain criminal aliens. The permanent provisions regarding judicial review provide in pertinent part as follows:

### § 1252. Judicial review of orders of removal

(a) Applicable provisions

(1) General Orders of Removal

Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to [8 U.S.C. § 1225(b)(1) ] ) is governed only by chapter 158 of Title 28 except as provided in subsection (b) and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

(2) Matters not subject to judicial review

. . .

(B) Denials of discretionary relief

Notwithstanding any other provision of law, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under [8 U.S.C. § 1182(h) ], [8 U.S.C. § 1182(i) ], [8 U.S.C. § 1229b], [8 U.S.C. § 1229c] or [8 U.S.C. § 1255], or

(ii) any other decision or action of the Attorney General the authority for which is specified under this chapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) [asylum] of this title.

(C) Orders against criminal aliens

Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered .by section 1227(a)(2)(A)(i) of this title . . . .

(b) Requirements for review of orders of removal

With respect to review of an order of removal under subsection (a)(1), the following requirements apply:

(1) Deadline The petition for review must be filed not later than 30 days after the date of the final order of removal.

(2) Venue and forms The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings . . . .

. . . .

(9) Consolidation of questions for judicial review Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this title.

. . . .

(d) Review of final orders A court may review a final order of removal only if—

---

11. § 106 of the INA.

12. § 242 of the INA.

(1) the alien has exhausted all administrative remedies available to the alien as of right, and

(2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

. . . .

(f) Limit on injunctive relief

. . . .

(2) Particular Cases Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

As a general matter the permanent provisions of IIRIRA became effective on "the first day of the first month beginning more than 180 days after the date of enactment," or April 1, 1997. *See* IIIRA § 309(a). However, § 306(c)(1) of IIRIRA provided that 8 U.S.C. § 1252(g) [13] "shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings."

**13.** § 242(g) of the INA.

## II. Application of the Statutory Provisions to Petitioner

Because of the many amendments to the INA statutory provisions and because of the varying effective dates of these amendments, this court is first called upon to determine which statutory provisions apply to Petitioner's case.

First, the court finds that the express language of IIRIRA § 306(c)(1) provides that the new 8 U.S.C. § 1252(g) applies to all claims arising from past, pending, or future exclusion, deportation, or removal proceedings. Thus, it seems clear that this provision applies to Petitioner. *See Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (NO. 97–1252).

■ Second, the court finds that because Petitioner's deportation proceedings commenced before April 1, 1997 and because a final order of deportation was not entered until after October 30, 1996, the transitional rules of IIRIRA govern judicial review of his deportation order. *See Perez v. Reno*, 18 F.Supp.2d 674, 679 (W.D.Tex.1998); 8 Charles Gordon, et al, Immigration Law and Procedure, § 104.13[4] (1998).

■ Third, notwithstanding the finding that judicial review of Petitioner's final deportation order is governed by the transitional rules of IIRIRA, this court finds that 8 U.S.C. § 1252 as amended by the permanent provisions of IIRIRA apply to Petitioner's request for a stay of deportation. These provisions became effective on April 1, 1997, and Petitioner filed the petition currently before the court on June 8, 1998, more than one year after their effective date. Requests for stays are matters collateral to deportation/removal orders and are committed the discretion of the Attorney General and her agents.

Having determined which statutory provisions of the INA are applicable, the court

will now consider the respective arguments of the parties regarding their application to the case at hand.

## A. Request for Stay of Deportation

■ Petitioner first seeks a stay of the order of deportation/removal. Title 8 U.S.C. § 1252(g) precludes federal courts from having jurisdiction to entertain claims directed towards the "commencement of proceedings," the "adjudication of cases," or the "execution of a removal order." *Reno v. American–Arab Anti–Discrimination Committee,* — U.S. —, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (NO. 97–1252). Petitioner's request is directed at the execution of the order of deportation/removal which has been issued against him. Thus, this court lacks jurisdiction under § 1252(g) to grant Petitioner the relief that he seeks.

Additionally, because this court finds that 8 U.S.C. § 1252 as amended by the permanent provisions of IIRIRA apply to Petitioner's request for a stay of deportation, this court also lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) and (f), as amended by IIRIRA to grant Petitioner the relief he seeks.

The decision of whether to grant a stay is within the discretion of the Attorney General. Title 8 U.S.C. § 1252(a)(2)(B)(ii) states in pertinent part as follows:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review—
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this chapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) [asylum] of this title.

Thus this provision precludes this court from reviewing the Attorney General's de-

cision to deny a stay of deportation/removal.

Moreover, this court is precluded from enjoining Petitioner's deportation/removal under 8 U.S.C. § 1252(f)(2) which provides:

> Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

Petitioner has not shown that execution of the order of deportation issued against him is prohibited as a matter of law. Thus, this court is expressly precluded from issuing a stay of the order of deportation.

## B. Request for Judicial Review of Deportation/Removal Order

Petitioner seeks to have this court review the denial of discretionary relief under 8 U.S.C. § 1182(c) and to declare that his deportation/removal order is invalid. The court must first determine its statutory jurisdiction to entertain Petitioner's claim.

### 1. Review of a Deportation Order under the INA Statutory Provisions

■ Under the transitional rules of IIRIRA regarding judicial review of deportation orders, the statute provides that "the petition for judicial review shall be filed with the court of appeals." IIRIRA § 309(c)(4)(C). It also provides that "there shall be no appeal of any discretionary decision under [8 U.S.C. § 1182(c) ]." IIRIRA § 309(c)(4)(E). Additionally, it states that "there shall be no appeal permitted in the case of an alien who is ... deportable by reason of having committed a criminal offense covered in ... [8 U.S.C. § 1251(a)(2)(B) [14] (controlled substance violations) ]." IIRIRA 309(c)(4)(G).

---

**14.** This classification of criminal offenses has been redesignated as 8 U.S.C. § 1227(a)(2)(B).

This court finds that the express language of the transitional rules of IIRIRA limits the judicial review available to all aliens and eliminates judicial review for certain criminal aliens. While the elimination of judicial review for certain criminal aliens is a new concept, the limitation regarding the forum for judicial review of a deportation order is not.

Prior to the enactment of AEDPA, 8 U.S.C. § 1105a(a) provided for exclusive review of deportation orders in the court of appeals, and aliens under orders of exclusion could "obtain judicial review of such order by habeas corpus proceedings [filed in the district court] and not otherwise." 8 U.S.C. § 1105a(b). This court has consistently held that review of deportation orders was not to be undertaken by district courts. *See Thomas v. INS*, 975 F.Supp. 840 (W.D.La.1997); *Ozoanya v. Reno*, 979 F.Supp. 447 (W.D.La.1997). This court is aware that its restrictive view of district court jurisdiction over deportation orders was not universally endorsed by all other courts. Several courts have held that former 8 U.S.C. § 1105a(a)(10) provided district courts with jurisdiction to review final orders of deportation through a petition for writ of *habeas corpus*. *Sandoval v. Reno*, 166 F.3d 225 (3d Cir.1999); *Auguste v. Reno*, 152 F.3d 1325 (11th Cir.

1998); *Farquharson v. INS*, 31 F.Supp.2d 403 (D.N.J.1999). However, this court's reading of § 1105a(a) in connection with § 1105a(a)(10) caused it to hold that the jurisdiction provided to district courts by former 8 U.S.C. § 1105a(a)(10) was limited to custody issues. *See Garcia v. Boldin*, 691 F.2d 1172, 1183 (5th Cir.1982); *Marcello v. INS*, 634 F.2d 964 (5th Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981)[15]; *see also Marriott v. Ingham*, 990 F.Supp. 209, 211–12 (W.D.N.Y.1998); *Garay v. Slattery*, 23 F.3d 744, 745 (2d Cir.1994).

The transitional rules of IIRIRA provide that the exclusive procedure for seeking review of either a deportation or exclusion order is by filing an appeal with the appropriate court of appeals, thereby eliminating the requirement that orders of exclusion be reviewed through *habeas corpus* petitions filed in the district courts. The statutory language of the transitional rules of IIRIRA does not provide a basis for this court to review Petitioner's deportation order. Additionally, because of Petitioner's conviction of a controlled substance violation, he is statutorily precluded from filing an appeal of his deportation order in the court of appeals. Thus, this court must

**15.** While it is true that many courts have construed the Fifth Circuit's decision in *Marcello* to hold that the district court could, under prior law, entertain a challenge to a deportation order under its *habeas corpus* jurisdiction, this court never construed *Marcello* in such a manner.

In *Marcello*, Marcello had been ordered deported in 1953 and in 1961. In 1972, he filed an application for a discretionary suspension of deportation. This request for discretionary relief was denied by the BIA in 1976. Marcello then filed the petition for writ of *habeas corpus* challenging the denial of his request for a discretionary suspension of deportation. The district court found that it had jurisdiction to review Marcello's challenge, and it granted the petition, remanding the matter back to the immigration judge for further proceedings. The INS then appealed the lower court's decision arguing that the district court had lacked jurisdiction to review Marcello's challenge because he was not "in cus-

tody" as required for *habeas corpus* review. The Fifth Circuit determined that Marcello was "in custody" and that jurisdiction was present to consider his claims raised in his petition for writ of *habeas corpus*.

This court reads *Marcello* as having allowed district courts to review, pursuant to the *habeas corpus* jurisdiction provided for in former 8 U.S.C. § 1105a(a)(10), decisions regarding discretionary relief from deportation when such decisions were not made in the proceeding where deportability was determined and when the petitioner met the "in custody" requirement for *habeas corpus* review. *C.f. Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 229, 84 S.Ct. 306, 315, 11 L.Ed.2d 281 (1963) (when deportability and application for discretionary relief are decided in the same proceeding, both are included in the term "final order of deportation" and are reviewable in the courts of appeals.)

consider the question of whether an avenue of review via *habeas corpus* remains available to such criminal in federal district courts.

### 2. Review of a Deportation Order under 28 U.S.C. § 2241

■ Under this court's reading of the INA statutes, aliens such as Petitioner are ineligible for judicial review of their deportation orders.[16] Thus, the question becomes whether any type of judicial review of their deportation orders remains. At the present time, there is no definite answer to this question. Courts which have addressed this issue have reached various and divergent holdings. Some courts hold that review of deportation/removal orders remains available to these criminal aliens in the district courts by filing a petition for writ of *habeas corpus under* 28 U.S.C. § 2241. *Sandoval v. Reno*, 166 F.3d 225 (3rd Cir.1999); *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998) *cert. denied, Reno v. Goncalves,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS,* 157 F.3d 106 (2d Cir.1998); *Magana–Pizano v. INS,* 152 F.3d 1213 (9th Cir.1998), *opinion amended by* 159 F.3d 1217, *cert. granted, judgment vacated by Magana–Pizano v. INS,* 525 U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) and *cert. granted, judgment vacated by INS v. Magana–Pizano,* 525 U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). Other courts hold that no review remains available to these aliens as the INA clearly precludes the review of deportation/removal orders for certain criminal aliens and any *habeas corpus* jurisdiction previously founded in 28 U.S.C. § 2241 has been repealed by the 1996 amendment to the INA. *Richardson v. Reno,* 162 F.3d 1338 (11th Cir.1998); *LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir.1998); *Yang v. INS,* 109 F.3d 1185 (7th Cir.1997).

During the early stages of jurisprudential development, this court had occasion to address the issue of what jurisdiction over immigration matters remained in the district courts after the enactment of AEDPA and IIRIRA. *See Thomas v. INS,* 975 F.Supp. 840 (W.D.La.1997). In *Thomas* this court declined to follow the line of cases which held that all *habeas corpus* jurisdiction previously granted to the district courts had been repealed. *See Yang v. INS,* 109 F.3d 1185 (7th Cir.1997). This court also declined to adopt the "grave constitutional error" standard which could have conceivably allowed district courts more jurisdiction than previously exercised under the pre-AEDPA standards. *See Fernandez v. INS,* 113 F.3d 1151 (10th Cir.1997) (substantial constitutional errors reviewable under 28 U.S.C. § 2241). Instead this court determined that district courts retained jurisdiction under 28 U.S.C. § 2241 to review "constitutional claims relating to matters which are collateral to an order of removal (generally custody issues) and are not expressly precluded from judicial review by AEDPA or IIRIRA."

The *Thomas* case was decided in the absence of any Fifth Circuit jurisprudence discussing and/or defining the scope of *habeas corpus* jurisdiction, if any, over immigration matters remaining in the district courts after the enactment of AEDPA and IIRIRA. The only guidance provided by the Fifth Circuit at that time was a statement in *Williams. v. INS,* 114 F.3d 82 (5th Cir.1997) that § 440(a) of AEDPA did not violate the Due Process Clause or the separation of powers principles encompassed in Article III of the U.S. Constitution because a " 'limited opportunity to apply for a writ of habeas corpus may remain'—at a minimum 'the writ that Art. I § 9 cl. 2 preserves against suspension.' " *Williams,* 114 F.3d at 84. However, the Fifth Circuit declined to explore the "perimeters of judicial review remaining avail-

---

**16.** Although Petitioner is subject to the transitional rules of IIRIRA, this court notes that the permanent provisions of IIRIRA would also preclude aliens such as Petitioner from obtaining review of their removal orders. 8 U.S.C. § 1252(a)(2)(C).

able to criminal aliens." *Id.* Additionally in *Nguyen v. INS,* 117 F.3d 206 (5th Cir. 1997), the Fifth Circuit held that the transitional rule of IIRIRA which denies judicial review of deportation orders to certain criminal aliens [IIRIRA § 309(c)(4)(G) ] does not violate the Constitution for the reasons stated in *Williams. See Nguyen,* 117 F.3d at 207. Thus, this court's decision in *Thomas* was guided, in part, by the holdings of these cases which seemed to imply that some type of *habeas corpus* jurisdiction remained in the district courts. Accordingly, the *Thomas* decision was an attempt by this court to define the scope of jurisdiction retained by federal district courts following the enactments of AEDPA and IIRIRA and in light of the jurisdiction previously exercised by district courts over immigration matters. *Thomas* clearly stated, and this court maintains, that nothing in either AEDPA or IIRIRA evidences an intent by Congress to broaden the *habeas corpus* jurisdiction of district courts in immigration cases. *Thomas,* 975 F.Supp. at 849. However, *Thomas* also stated that "AEDPA and IIRIRA do not contain clear evidence of congressional intent to divest district courts of all *habeas corpus* jurisdiction under § 2241." It is this holding which this court must now revisit in light of subsequent jurisprudence and a closer examination of the amendments.

Following the *Thomas* case, this court continued to exercise jurisdiction over constitutional issues which were collateral to the order of deportation and/or removal, namely constitutional challenges to the detention of an alien. However, unpublished decisions by the Fifth Circuit seemed to erode this court's ruling in *Thomas.* Specifically, in cases in which this court undertook a review of the merits of an alien's claim and denied relief, the Fifth Circuit, on appeal, would affirm the denial of relief but would find that this court lacked jurisdiction to entertain the petition for writ of *habeas corpus* in light of 8 U.S.C. § 1252(g). Thus, this court began to question whether it retained any *habeas corpus*

jurisdiction in immigration matters under current law. *See Nguyen v. INS,* 117 F.3d 206 (5th Cir.1998); *Massoud v. Reno,* 97–30072, 1998 WL 30018 (unpublished) (5th Cir.1998).

Additionally, since the *Thomas* decision, the Fifth Circuit has affirmed several cases in which this court cited *Thomas* and held that it lacked jurisdiction to review the order of deportation and/or removal or to review the denial of discretionary relief despite the fact that such holding would deprive the alien of any judicial review of his deportation/removal order. *See Williams v. INS,* 97–cv–1428 (W.D.La. 1997), aff'd. No. 97–31269 (unpublished) (5th Cir.1998); *Green v. Reno,* 97–cv1727 (W.D.La.1997), aff'd. No. 98–30538 (unpublished) (5th Cir.12/30/1998).

In *Williams v. INS,* 97–cv–1428 (W.D.La.1997), a deportation hearing was held on April 5, 1996, at which Williams conceded deportability and applied for discretionary relief under 8 U.S.C. § 1182(c). While his application for discretionary relief was pending, the AEDPA was enacted on April 24, 1996. The amendments of AEDPA § 440(d) caused Williams to no longer be eligible for discretionary relief under 8 U.S.C. § 1182(c). However because Williams had applied for this relief prior to the enactment of AEDPA, the immigration judge determined that the amendment to 8 U.S.C. § 1182(c) did not preclude Williams' eligibility for relief. On September 13, 1996, the immigration judge granted Williams' application for discretionary relief under 8 U.S.C. § 1182(c). The INS appealed the decision to the BIA on the basis that the amendment to 8 U.S.C. § 1182(c) applied to applications pending on April 24, 1996, and thus, under the amended text of § 212(c), Williams was not eligible for relief under 8 U.S.C. § 1182(c). *Matter of Soriano,* Interim decision 3289, 1996 WL 426888, February 21, 1997. On April 24, 1997, the BIA found Williams statutorily ineligible for a discretionary relief from deportation under 8

U.S.C. § 1182(c) and upheld the order of deportation against him.

Williams petitioned this court for *habeas corpus* relief challenging the denial of discretionary relief under 8 U.S.C. § 1182(c) as unconstitutional. This court held that it had no jurisdiction to review Williams' claims because his order of deportation was contingent upon the denial of discretionary relief and that courts of appeals have exclusive jurisdiction to review final orders of deportation/removal irrespective of whether that judicial review is barred by 8 U.S.C. § 1252(a)(2)(c) (as amended by § 440(a) of AEDPA).[17] The court further noted that although Williams' circumstances were unfortunate, the "jurisdiction of this court [cannot be expanded] simply because sympathy exists for a particular party." On appeal, the Fifth Circuit affirmed this court's finding that it lacked jurisdiction to entertain Williams' challenges. *Williams v. INS*, 97–cv–1428 (W.D.La.1997), aff'd. No. 97–31269 (unpublished) (5th Cir.1998).

Additionally, in *Green v. Reno*, 97–cv–1727 (W.D.La.1997). Green challenged the legality of a final order of deportation issued against him and the legality of detention by the INS. Green had been charged with being deportable under 8 U.S.C. § 1251(a)(2)(B)(i)[18] (controlled substance conviction) and 8 U.S.C. § 1251(a)(2)(A)(iii)[19] (aggravated felony conviction). This court held that it had no jurisdiction to review Green's challenge to his deportation order as exclusive jurisdiction over such challenges rests with the courts of appeals under 8 U.S.C. § 1252(b).

Green appealed this court's dismissal of his challenge to the deportation order for lack of subject matter jurisdiction. In an unpublished decision on December 30, 1998. the Fifth Circuit held that·"[t]he trial court did not err in dismissing, for lack of jurisdiction, Green's claims concerning his deportation order. The statute vests exclusive jurisdiction to review deportation orders in the courts of appeals. 8 U.S.C. § 1252(a)(1), (b)(2)." *Green v. Reno*, 97–cv–1727 (W.D.La.1997), aff'd. No. 98–30538 (unpublished) (5th Cir.12/30/1998).

These unpublished decisions of the Fifth Circuit call into question *Thomas'* holding regarding the scope of review which remains in the federal district courts under 28 U.S.C. § 2241 while bolstering this court's conclusion that courts of appeals are the exclusive forum for challenging deportation/removal orders irrespective of whether such judicial review is barred by 8 U.S.C. § 1252(a)(2)(C).

Since this court decided *Thomas*, at least two circuit courts of appeals have published decisions in which they concluded that the 1996 amendments to the INA completely repealed the *habeas corpus* jurisdiction of federal courts under § 2241 with respect to immigration matters. *Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998); *LaGuerre v. Reno*, 164 F.3d 1035 (7th .Cir.1998). Additionally, the United States Supreme Court has discussed the scope of 8 U.S.C. § 1252(g) in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) and has, in *INS v. Magana–Pizano*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999), vacated the decision of the Ninth Circuit in *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998)[20] and remanded it for fur-

---

**17.** 8 U.S.C. § 1252(a)(2)(c) precludes judicial review of an order of removal issued against an alien convicted of an offense covered in § 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) (aggravated felony, controlled substance violation, firearms offense, and certain espionage offenses).

**18.** This classification of criminal offenses has been redesignated as 8 U.S.C. § 1227(a)(2)(B)(i).

**19.** This classification of criminal offenses has been redesignated as 8 U.S.C. § 1227(a)(2)(A)(iii).

**20.** In *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998), modified in part by 159 F.3d 1217, held that *habeas corpus* review of deportation/removal orders remained available in the federal district courts despite the seemingly broad language of 8 U.S.C. § 1252(g). *See* discussion of this case *infra*.

ther consideration in light of *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

In *Richardson*, the Eleventh Circuit held that "[s]imply put, IIRIRA strips all jurisdiction, including § 2241 *habeas*, from the district courts, [and] places exclusive judicial review in the court of appeals." *Richardson*, 162 F.3d at 1345. It reached this conclusion after discussing the various amendments to the INA by IIRIRA. Specifically, the court in *Richardson* held that 8 U.S.C. § 1252(g) "clearly and unequivocally precludes any jurisdiction [including *habeas corpus* jurisdiction] in the district court except that provided in [8 U.S.C. § 1252]."[21] *Richardson*, 162 F.3d at 1357. The *Richardson* court went on to point out that 8 U.S.C. § 1252 does not provide *habeas corpus* review of deportation/removal orders. Moreover, the *Richardson* court held that while there is no express language in the INA repealing *habeas* jurisdiction over immigration matters, the broad language employed by Congress in 8 U.S.C. § 1252(g) "repeals any statutory jurisdiction over immigration decisions other than conferred by [8 U.S.C. § 1252]. That repeal includes § 2241 habeas jurisdiction over immigration decisions by the Attorney General under the INA." *Richardson*, 162 F.3d at 1358. The Eleventh Circuit emphasized that the specific statutory grant of *habeas* jurisdiction in 8 U.S.C. § 1252(e)(2) "evidences Congress' ability to create statutory habeas review under the INA when it so desires . . . [as well as] Congress' clear intent in [8 U.S.C. § 1252(g) ] that no court shall have jurisdiction over immigration decisions except as provided under 8 U.S.C. § 1252." *Richardson*, 162 F.3d at 1357.

Because Richardson was an alien convicted of a criminal offense specified in 8 U.S.C. § 1252(a)(2)(C), he could not obtain judicial review of his deportation order in the court of appeals. Thus, Richardson argued that this denial of judicial review is unconstitutional. The Eleventh Circuit considered Richardson's argument but held that "[8 U.S.C. § 1252(g) ]'s repeal of habeas jurisdiction over immigration decisions does not violate the Due Process Clause and Article III because neither provision mandates judicial review of immigration decisions." *Richardson*, 162 F.3d at 1360; *see also Carlson v. Landon*, 342 U.S. 524, 537 n. 28, 72 S.Ct. 525, 533 n. 28, 96 L.Ed. 547 (1952).

In *LaGuerre*, the Seventh Circuit held that "for the class of aliens encompassed by § 440(a) [of AEDPA], judicial review by means of habeas corpus did not survive the enactment of that section." *LaGuerre*, 164 F.3d at 1040. In reaching this conclusion, the *LaGuerre* court reviewed the history of *habeas corpus* in the context of immigration proceedings and considered Congressional intent.

The Seventh Circuit stated that prior to 1961, "the mode of judicial review of deportation orders was by habeas corpus or . . . declaratory judgment actions, in federal district courts." *LaGuerre*, 164 F.3d at 1038. "In 1961, Congress made review of such orders by courts of appeals, without preliminary recourse to the district courts, the exclusive method of judicial review." *Id.*; former 8 U.S.C. § 1105a. However, the 1961 amendments preserved the right to seek habeas corpus review in the district courts whenever the alien was in custody.[22] Thirty-five years later, Congress enacted AEDPA, repealing the provision preserving a limited right to apply for

---

**21.** Only 8 U.S.C. § 1252(e)(3)(A) specifically provides for jurisdiction in the district court, and this grant of jurisdiction is limited to the United States District Court for the District of Columbia.

**22.** As discussed above, the scope of the review by district courts pursuant to 8 U.S.C.

§ 1105a(a)(10) has been much debated by the courts. The *LaGuerre* court states that "courts have struggled to reconcile this provision which permits the alien to proceed in district court, see 28 U.S.C. § 2241(a), with the overall statutory purpose." *LaGuerre*, 164 F.3d at 1038.

habeas corpus [AEDPA § 401(e)] and foreclosing judicial review of final deportation orders to certain criminal aliens [AEDPA § 440(a)].

The *LaGuerre* court noted that the purpose of the AEDPA amendments was to "curtail and speed up judicial review of deportation orders directed against disfavored classes of criminals." *LaGuerre*, 164 F.3d at 1039. That court further observed that to allow habeas review to such criminal aliens would thwart the Congressional purpose by expanding rather than narrowing the judicial review available to this class of aliens.

The *LaGuerre* court found that it was within the province of Congress to curtail statutory enlargements of the writ. In support of this finding, the court pointed out the extremely limited nature of habeas corpus relief at the time that the Constitution was enacted [23] and how over the years Congress had authorized a much broader use of habeas corpus through statutes. *LaGuerre*, 164 F.3d at 1038. Thus, the court implied that Congress could restrict the use of the writ to the original scope and eliminate habeas relief for aliens such as those before it without offending the Constitution.[24] The *LaGuerre* court opined that restriction of Congress' ability to limit the scope of statutory habeas corpus would lead to few, if any, further enlargements.

The reasoning of the *Richardson* and *LaGuerre* courts as well as their discussions of statutory history and Congression-

al intent and the implications of the unpublished Fifth Circuit opinions discussed above, persuade this court that any statutory habeas jurisdiction which federal district courts may have previously had over immigration matters under 28 U.S.C. § 2241 has been repealed.[25]

Moreover, recent United States Supreme Court pronouncements in immigration cases support this position. In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court discussed the scope of 8 U.S.C. § 1252(g) and held that it barred judicial review of the Attorney General's decisions to "commence proceedings, adjudicate cases, or execute removal orders" unless the statute otherwise provided for jurisdiction. The Supreme Court also noted that 8 U.S.C. § 1252(g) applies to transitional cases pending at the time of IIRIRA's enactment. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940. In light of the Supreme Court's discussion, this court finds that Petitioner's challenge to his deportation order which resulted from the denial of relief under 8 U.S.C. § 1182(c) concerns the adjudication of immigration cases, and thus, falls squarely within 8 U.S.C. § 1252(g) as recently defined by the United States Supreme Court in *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). As such, "no court shall have jurisdiction to hear" this type of claim, unless jurisdiction

**23.** As originally conceived, the writ of *habeas corpus* "lay only to test the jurisdiction of whatever governmental body or officer was detaining the applicant." *LaGuerre*, 164 F.3d at 1038.

**24.** The *LaGuerre* court concluded that an opportunity to apply for *habeas corpus* relief was not necessary as "[t]he issue they wish to press—the issue of whether they are entitled to ask for discretionary relief from these orders [of deportation]—does not raise doubts about the jurisdiction of the Immigration and Naturalization Service over them." *LaGuerre*, 164 F.3d at 1039.

**25.** The court notes that this finding differs from the holding in *Thomas*, in which this court held that § 2241 habeas jurisdiction previously granted to district courts had not been entirely repealed. Thus, to the extent that *Thomas* held that district courts retain *habeas corpus* jurisdiction to review constitutional claims related to matters collateral of deportation orders, generally matters of custody, it is recommended that *Thomas* be overruled.

is provided for elsewhere in 8 U.S.C. § 1252. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 944, 142 L.Ed.2d 940. Neither 8 U.S.C. § 1252 nor the transitional rules of IIRIRA provide for review of Petitioner's deportation order and/or denial of discretionary relief.[26] Additionally, the provision granting *habeas corpus* jurisdiction to the district courts has been expressly repealed, thereby evidencing the intent of Congress to eliminate a statutory grant of *habeas corpus* jurisdiction.[27] The fact that 8 U.S.C. § 1252 has a provision, § 1252(e), which specifically grants *habeas* jurisdiction in limited cases lends weight to the position that general statutory *habeas* jurisdiction under § 2241 has been repealed. *See Richardson*, 162 F.3d at 1357; *see also Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 944, 142 L.Ed.2d 940.

Further the United States Supreme Court's recent rulings in *INS v. Magana–Pizano*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) and *Magana–Pizano v. INS*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) give additional weight to the conclusion that § 2241 habeas jurisdiction has been repealed by the 1996 amendments to the INA. In *Magana–Pizano*, the Ninth Circuit held that because certain criminal aliens were statutorily denied review of their deportation/removal orders in the courts of appeals pursuant to the amendments to the INA by AEDPA and IIRIRA, 8 U.S.C. § 1252(g) could not be applied in such a way as to deprive the alien of *habeas corpus* review in the district courts when other avenues of review were foreclosed. *Magana–Pizano v. INS*, 152 F.3d at 1217. On March 8, 1999, the United States Supreme Court granted the application for a writ of certiorari. The Supreme Court then stated that "[t]he judgment is vacated and this case is remanded to the United States Court of Appeals for the Ninth Circuit in light of *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)." *INS v. Magana–Pizano*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) and *Magana–Pizano v. INS*, —— U.S. ——, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999).

## III. The Constitutional Writ

■ As a general matter, the courts which have found that judicial review of deportation/removal orders remains available pursuant to § 2241 for the class of criminal aliens who are statutorily precluded from review by the amendments of AEDPA (§ 440(a)) and IIRIRA (§ 309(c)(4)(G) and § 306(a)) have done so because of concern that the United States Constitution requires such review. *See Sandoval v. Reno*, 166 F.3d 225 (3rd Cir. 1999); *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998) *cert. denied, Reno v. Goncalves*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS*, 157 F.3d 106 (2d Cir.1998); *Magana–Pizano v. INS*, 152 F.3d 1213, 1216 (Suspension Clause prevents IIRIRA from foreclosing access to general statutory habeas relief), *cert. granted, judgment vacated* 525 U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940; *Jean–Baptiste v. Reno*, 144 F.3d 212 (2d Cir.1998); *Amerson v. INS*, 36 F.Supp.2d 339 (W.D.La.1998); *Farquharson v. INS*, 31 F.Supp.2d 403 (D.N.J.1999).

Even courts which have found that the amendments of AEDPA and IIRIRA have

---

**26.** The only judicial review provided for final deportation orders is in the courts of appeals (8 U.S.C. § 1252(b) & IIRIRA §§ 309(c)(4)(D)), and Petitioner is ineligible to apply for this relief because of his criminal convictions (8 U.S.C. § 1252(a)(2)(C) & IIRIRA § 309(c)(4)(G)). Further, § 309(c)(4)(E) provides that "there shall be no appeal of any discretionary decision under § 212(c)."

**27.** AEDPA § 401(e) which repealed § 106(a)(10) of the INA was titled "Elimination of Custody Review by Habeas Corpus."

abolished judicial review of immigration matters pursuant to § 2241 are hesitant to conclude that the class of criminal aliens who are statutorily precluded from seeking judicial review of their deportation/removal orders are barred from obtaining judicial review of constitutional issues related to their deportation/removal orders. *See La-Guerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998); *Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998); *Lerma de Garcia v. INS*, 141 F.3d 215 (5th Cir.1998); *Yang v. INS*, 109 F.3d at 1195; *Rusu v. Reno*, 999 F.Supp. 1204, 1210 (N.D.Ill.1998); *Zisimo-poulos v. Reno*, 1998 WL 437266 (E.D.Pa. 1998); *Perez v. Reno*, 18 F.Supp.2d 674 (W.D.Tex.1998). However, these courts differ in their opinions regarding the procedure and forum for bringing such constitutional challenges.

The Third, Seventh, and Eleventh Circuit Courts of Appeals have held that despite the statutory prohibition of review for deportation/removal orders for certain criminal aliens, direct review in the courts of appeals remains available for such aliens wishing to challenge their deportation on constitutional grounds. *See LaGuerre*, 164 F.3d at 1040, citing *Morel v. INS*, 144 F.3d 248 (3d Cir.1998) and *Richardson*, 162 F.3d at 1357–58. However, in *Lerma de Garcia*, the Fifth Circuit declined to adopt such an exception to the statutory prohibition when presented with a constitutional challenge to deportation proceedings and to IIRIRA. In *Lerma de Garcia*, the alien was barred by § 309(c)(4)(G) of IIRIRA's transitional rules from obtaining judicial review of his order of deportation. The Fifth Circuit held that it "lacked jurisdiction to hear Petitioner's constitutional claims in the context she has raised them ... [but that] criminal deportees retain some opportunity to apply for writs to

habeas corpus." *Lerma de Garcia*, 141 F.3d at 217.[28]

Other courts finding that criminal aliens retain some rights of judicial review despite the repeal of § 2241 habeas jurisdiction have found that such rights flow directly from the Suspension Clause of the Constitution. *Yang*, 109 F.3d at 1195 (review remains available under "constitutional writ, unaided by statute"); *Rusu v. Reno*, 999 F.Supp. 1204, 1210 (N.D.Ill. 1998) (district court retains habeas jurisdiction within the narrow jurisdictional scope of the Suspension Clause); *Zisimo-poulos v. Reno*, 1998 WL 437266 (E.D.Pa. 1998) (§ 1252(g) divests courts of habeas jurisdiction pursuant to § 2241 but district court retains jurisdiction over "constitutional habeas claims" if petitioner alleges a "colorable substantial constitutional violation."); *Then v. INS*, 37 F.Supp.2d 346 (D.N.J.1998): *see also Perez v. Reno*, 18 F.Supp.2d 674 (W.D.Tex.1998) (discussing jurisdiction under Suspension Clause without deciding if jurisdiction remains under § 2241); *see also Lerma de Garcia*, 141 F.3d at 217 (implying that the only review left to criminal deportees may flow directly from the Suspension Clause).

Because there is a consensus that some type of review remains available to the class of criminal aliens who are statutorily precluded from obtaining direct review in the courts of appeals, and because, for the reasons discussed above, this court finds that there is no statutory grant of jurisdiction to review such claims, this court agrees with the courts which find that any remaining jurisdiction to review claims of criminal aliens statutorily precluded from seeking judicial review must flow from the Suspension Clause of the Constitution. Accordingly, this court must determine whether it has jurisdiction to review Peti-

---

**28.** In *Lerna de Garcia*, the Fifth Circuit cited its prior decisions in *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir.1997) and *Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997) in support of this statement. The basis of the Fifth Circuit's statement can be found in *Williams*

where the Fifth Circuit notes its agreement with other courts with have held that a " 'limited opportunity to apply for a writ of habeas corpus may remain'—at a minimum 'the writ that Art. I § 9 cl.2 [of the United States Constitution] preserves against suspension.' "

tioner's claims under the authority of the Suspension Clause of the United States Constitution.

The Suspension Clause is found in Art. I, Section 9 of the United States Constitution and provides as follows:

The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or invasion the public Safety may require it.

Few courts have expressly addressed the scope of judicial review available under this constitutional provision. The Seventh Circuit has on at least two occasions noted the limited nature of the writ established by the Constitution. In *LaGuerre*, the Seventh Circuit stated:

We doubt that the suspension clause requires preserving habeas corpus as a vehicle for challenging final orders of deportation in cases in which the jurisdiction of the immigration authorities over the alien is not in question. At the time the Constitution was enacted, habeas corpus was an extremely limited remedy. It lay only to test the jurisdiction of whatever governmental body or officer was detaining the applicant.

*LaGuerre*, 164 F.3d at 1038.

In *Yang*, the petitioners were challenging the fact that because of their criminal convictions, they could not obtain judicial review of the denial of discretionary relief under 8 U.S.C. § 1182(c). The petitioners argued that the court had jurisdiction under the Suspension Clause to grant the relief that they were seeking. In considering their argument for jurisdiction under the Suspension Clause, the Seventh Circuit expressed their reluctance to .

place weight on its availability, because the Supreme Court long ago made it

clear that this writ does not offer what our petitioners desire: review of discretionary decisions by the political branch of government. See e.g. *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927).

*Yang*, 109 F.3d at 1195.

The court in *Yang* also noted that the relief offered by the "Great Writ preserved in the Constitution" was narrower than the opportunity for collateral attack offered by 28 U.S.C. § 2241. *Yang*, 109 F.3d at 1195.

The district courts which have addressed the scope of jurisdiction under the Suspension Clause have reached varying conclusions.

In *Perez v. Reno*, 18 F.Supp.2d 674 (W.D.Tex.1998), while not "delineating the entire breadth of scope of review under the Suspension Clause," the district court concluded that the jurisdiction provided by the Suspension Clause "encompassed at least review of the statutory merits of Perez's complaint." [29] *Perez*, 18 F.Supp.2d at 682. The court then proceeded to consider Perez's challenge to the retroactive application of IIRIRA § 309(c)(4)(G) and AEDPA § 440(d) to him.

In *Rusu v. Reno*, 999 F.Supp. 1204 (N.D.Ill.1998), the district court noted the narrow jurisdictional scope of the Suspension Clause and then determined that it did not have jurisdiction to consider Rusu's petition under the Suspension Clause.[30] Additionally, the district court in *Rusu* pointed out that as a statutory court, it could only exercise jurisdiction conferred on it by statute and that "[b]ecause the Suspension Clause does not specifically invest the district court with jurisdiction

**29.** In *Perez v. Reno, supra.*, the petitioner sought declaratory relief that the IIRIRA or AEDPA were unconstitutional as applied to him. Perez was denied discretionary relief under 8 U.S.C. § 1182(c) as amended by § 440(d) of AEDPA.

**30.** In *Rusu v. Reno, supra.*, Rusu's applications for asylum and withholding of deportation were denied. Following appeal to the BIA and the court of appeals, Rusu filed a petition for writ of *habeas corpus* in the district court seeking a stay of deportation and challenging his deportation order as unconstitutional.

over claims similar to Rusu's, this court lacks any basis, statutory or otherwise, to exercise jurisdiction over his claims." *Rusu*, 999 F.Supp. at 1212.

In *Zisimopoulos v. Reno*, 1998 WL 437266 (E.D.Pa.1998), the district court, without much discussion, concluded that the "constitutional habeas remains intact" and that pursuant to such authority, district courts retain jurisdiction over "colorable, substantial constitutional violation[s]." *Zisimopoulos v. Reno*, 1998 WL 437266, *2.

Having considered the cases cited above and the reasons set forth therein, this court agrees with the courts which hold that the review available to aliens under the Suspension Clause is narrow. *La-Guerre*, 164 F.3d at 1038; *Yang*, 109 F.3d at 1195; *Rusu*, 999 F.Supp. at 1212. Specifically, this court finds that the relief Petitioner seeks, review of a final order of deportation resulting from the denial of discretionary relief, is not within the scope of review available under the Suspension Clause. *See Yang*, 109 F.3d at 1195. Further, this court finds hat it has not been vested with the authority to consider claims brought pursuant to the Suspension Clause.

Merely because judicial review under the Constitution may remain available to criminal aliens otherwise precluded from such judicial review by statute does not necessarily imply that such jurisdiction rests with federal district courts. Lower federal courts are created by statute. "[C]ourts created by statute have no jurisdiction other than that which has been conferred upon them by statute. *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147. 8 How. 441, 49 U.S. 441, 12 L.Ed. 1147 (1850)." *Lerma de Garcia* 141 F.3d at 217, quoting *Chow v. INS*, 113 F.3d 659, 668 (7th Cir.1997); *Rusu*, 999 F.Supp. at 1212. As discussed above, Congress has amended 'NA to limit federal court review of immigration matters by repealing the statutory authority by which federal district courts previously reviewed immigra-

tion matters.' Further, the Suspension Clause of the Constitution does not specifically invest this court with jurisdiction to consider Petitioner's claims. Thus, without a specific grant of jurisdiction, this court lacks jurisdiction to consider Petitioner's claims. *Rusu*, 999 F.Supp. at 1212.

The court is cognizant of the Fifth Circuit's statement that "criminal deportees retain some opportunity to apply for writs of habeas corpus." *Lerma de* Garcia, 141 F.3d at 217; *Nguyen*, 117 F.3d at 207; *Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997). However, as of yet, the Fifth Circuit has neither determined the scope of judicial review which can be obtained by applying for a writ of *habeas corpus nor* declared whether such application can be made in the district court or whether only the United States Supreme Court has jurisdiction to entertain a constitutional writ of habeas corpus in light of the statutory provisions of the INA. In the absence of Fifth Circuit jurisprudence on this issue, this court concludes that the constitutional writ preserved by the Suspension Clause of the Constitution should not be entertained by this court without a specific grant of jurisdiction to do so.

ACCORDINGLY,

IT IS RECOMMENDED that Petitioner's application for writ of *habeas corpus* be DENIED and DISMISSED as this court is without jurisdiction to consider his challenges or to grant the relief he seeks.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling. 29

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM

THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED–TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.